OK, our final case this morning is number 17-1682, Alexam, Inc. versus Wildcard Systems, Inc. Mr. Gresham, Mr. Gresham, before we start the clock, why is it that the district court decision here is marked confidential? I mean, surely it has all sorts of material in it which is not confidential. I think that's a good question. It was filed under seal and then marked confidential. And your honor is correct, that there are plenty of material in the decision, the order, that is not confidential. Is there anything in the order that is confidential? There are some issues regarding the terms of the license agreement itself, that if those are set out specifically. They're not really set out specifically in terms of royalty payments, I don't believe, or anything that would be confidential from that standpoint. Who asked that this be filed under seal? The Appalachians did. Well, Mr. Borney, can you tell us why you asked to have this done under seal? Your honor, with respect to the confidential information, we did try to reach an agreement with Alex Sam to substantially reduce the amount of confidential information in the joint appendix, but we were not able to reach an agreement. OK. Why don't we start the clock again at 15 minutes? OK, Mr. Gresham. May it please the court, this is a breach of contract case arising out of Florida law, filed in Florida State Court, that has found its way before your honors, I suppose because the word patent was implicated, and thus the district court found that there was federal subject matter jurisdiction over the claims in this case. The district court heard in a couple of respects. I'll spend the initial part of my argument and the bulk of my argument on the jurisdictional issues. It's undisputed that federal law did not create the cause of action. It is a state law breach of contract claim. But under the Holmes fix, a counterclaim that raises a patent issue is within the district court's original jurisdiction, and then within the removal jurisdiction. It doesn't have to be a compulsory counterclaim, right? Well, it does have to be a compulsory counterclaim. Not only for our jurisdiction, not for the district court's. Well, that is true. However, if it's a permissive counterclaim, then there must be a jurisdictional basis separate and apart. In other words, a federal question. But doesn't the Supreme Court's decision in their trial against Murawski make clear that a declaratory judgment action, I think in that case, non-infringement, but I can't think why non-validity would be any different, is a claim arising under federal law because you look at a threatened patent owner's contract. Why isn't that sufficient to establish the district court's jurisdiction, and then our jurisdiction is a separate jurisdiction? Yes. And I was about to get to that. There's a two-pronged assessment here of federal subject matter jurisdiction. The first is, does the claim itself, the breach of contract claim, arise under federal law? I'm ignoring that. You don't have to get to that if the counterclaim is sufficient. Well, you have to get to it in terms of whether there is a remand, whether it is supplemental jurisdiction that allows it to be in front of the federal court, or whether it should be remanded. The district court completely skipped over whether the breach of contract claim arises under federal law, and went straight to the 1454, saying that because there's a counterclaim that the appellees say is compulsory, and she made no. Can you start with, let's first ask the question, does the counterclaim arise under federal law within the scope of Murawski? OK. There are two considerations for the counterclaim. The first is whether the appellee said standing to bring the counterclaim in the first place. There has to be an injury in fact, something concrete, something real, to base the counterclaim on. There is no such thing here. There's a breach of contract claim. There's no infringement claim. If infringement had been asserted, threatened under the totality of the circumstances under metamune, had been something that could be real, then it would be a different analysis. However, if you Well, that's a metamune argument. Put that to one side for the moment. OK. Let's assume that there was an actual controversy with respect to infringement. This is a counterclaim, even if it's not compulsory, that creates district court jurisdiction under those circumstances, right? It would be a permissive counterclaim. Therefore, there would have to be a separate basis for jurisdiction. You don't have diversity of parties here. You'd have to find a federal question separate and apart. If there is a counterclaim, which arises under the patent law, the district court has jurisdiction, right? That is correct. If it arises under patent law. If it does. The counterclaim arises under patent law, doesn't it? Well, you can't just make the leap saying that it claims invalidity, therefore it arises under the patent law. You have to go through the steps to determine, is there an actual case in controversy? The district court said no. She linked the counterclaim to the language in the termination paragraph of the license agreement. And then once she determined that the license agreement had been terminated, she found no independent basis for the counterclaim and then dismissed it as such. There's also whether the transaction and occurrence is the same that the counterclaim arose out of. Did it arise out of the same transaction occurrence as the subject matter of the claim? No. The claim is a breach of contract claim. There are elements to breach of contract. The question here is whether the appellees failed to pay the royalties that elects some claims that they're owed. Under an infringement claim, that implicates prior art and claim construction and those sorts of things. It's a totally different set of circumstances, set of facts. Also, for there to be a compulsory counterclaim here, you have to look at whether it serves a useful purpose. In this case. But under cargo and chemical, I think it's the right case that we're supposed to defer to the 11th Circuit's judgment about that, about whether it's compulsory, right? Well, that is true. But if you look at the 11th Circuit's order, it's very similar to the district court's order in that there's no analysis of whether there's an actual case in controversy. Does it arise out of the same set of facts as the claim? There is no analysis whatsoever relative to whether the. But we do have to follow the 11th Circuit unless the compulsory counterclaim is implausible, clearly wrong. I think it's Christensen maybe that maybe says that. Even though we don't have independent judgments and a ping pong process that follows. So why isn't it plausible to say, you brought a contract action. You're going to want damages going, perhaps, and you don't deny this, I think, beyond the date of the complaint. Those damages will be accumulating until such time as the contract is terminated. Invalidity judgment will, under the terms of the contract, terminate the contract and thereby cut off, as I think you agree in your brief, the amount of damages that might be recovered even in this case. Why is that not, does that not satisfy the logical relation test for compulsory counterclaims, or at least plausibly do so? Well, because infringement has not been asserted. There's been no threat of infringement. Invalidity. Invalidity terminates the contract. Does it not? It does. OK. So forget about infringement. OK. Well, but the language of the termination provision, which the district court relied on in terms of attaching federal subject matter jurisdiction to the counterclaim, says that this agreement shall remain in full force and effect unless the claims of the licensed patents are held invalid or unenforceable by a court of competent jurisdiction. The district court took that as an invitation to say that you could attack the validity of the patents as a way to terminate the agreement. The licensing agreement was put in place to resolve the case for controversy, not to create a case for controversy, which is exactly what the district court allowed here. I have a difficulty in seeing how this is really different from meta-media. Well, it's different because the language of the contract is different. Or excuse me, of the complaint is different and the language of the contract is different. The complaint has one line in the entire complaint that says, that references the patents. It says, the license agreement details the obligations of the parties with respect to the patents owned by Alexa. That's it. Sections three, paragraphs three and four of the license agreement detail what is covered, what the covered processes are. The covenant not to sue provision, the most favored nations provision, the timing and reports section of the agreement all refer to paragraphs three and four. They do not refer to the patents. So one way to look at this is, if the patents did not exist, the court could still interpret this contract in the plain language that it's written and determine what's covered, what, if any, royalties are due to be paid, that sort of thing. So you can't overlook the claim itself to attach. That may be true in terms of the definition of what the royalties are being paid on, not relating strictly to whether the patents would have been infringed. But the contract still says it's terminated if the patents are invalid. And in Medellin, the Supreme Court said that you can have a declaratory judgment action to determine invalidity under circumstances like that. Well, invalidity, though, it's an affirmative defense to an infringement allegation. We have nothing that even hints of infringement in this case. But there's still a controversy about whether the contract should be treated as terminated because the patent's invalid. But it does not provide a sword for the licensee to attack the validity of the patents. In fact, the metamune sort of says it does. Well, metamune sort of says that it does. The facts are different in metamune. The Supreme Court has also held that a third party, in Lear, in fact, the Supreme Court said that a third party, that a licensee could stop paying royalties if a third party attacks and seeks invalidity and is successful over the basis of the patents. Not the licensee. And I believe that, I don't believe the party's ever meant to create this sword when they're trying to resolve the conflict. This is a settlement and license agreement where the parties are dismissing with prejudice all their claims or potential claims arising out of that occurrence. If we go down this road where this counterclaim is deemed to be compulsory, then it opens the door for these attacks on license agreements by licensees. And every breach of contract case is going to end up before your honors, whether it was well pleaded under the state law of the forum where it was filed, the state courts, or not. So it would upend the well pleaded complaint rule if the plaintiff is not the master of his complaint. If there are no allegations of infringement, patents are not implicated in any way. There's no need to construe the claims. And in fact, the Gunn versus Minton case is instructive on this. Granted, it was a legal malpractice case, but it was much more detailed in terms of patent issues. It was a patent issue that was asserted. It was patent law that was applied. It was a case within a case, patent case. And yet the Supreme Court says the patents were only indirectly involved in this matter. And the state court is completely capable of handling these issues here as well. The state court is completely competent to handle the- So in your view that the breach of license agreement should go forward in the Florida state court, the other side could, in that forum, assert invalidity as a trigger for terminating the contract, or could not? I don't think so. I don't think an invalidity is a compulsory counterclaim under a breach of contract claim. Well, that's not the question. That's not the question. In Florida court. In Florida court? Yes. I think they asserted an affirmative defense, and I believe that they could assert the affirmative defense, and it would accomplish- So the Florida court is, at that point, going to decide the validity of the patent? I don't think the- Well, they could. They could, and the Supreme Court has said that they're entitled to do that. The state courts are entitled to do that. Well, there's no binding precedent on a state court. A state court can determine patent issues, patent defenses, patent claims, and make a ruling on it. If it's a federal court, it follows to other federal courts. If it's a state court, and the Grable case talked about this, the Gunn v. Minton case talks about this, where a state court is completely the appropriate forum for state issues to be resolved, even if they implicate patent issues, such as here, invalidity. Okay. Do you want to save the remainder of your time? Yes, sir. Thank you. Mr. Barney. Thank you, Your Honor. May it please the court? We'll jump right into the jurisdictional issue. The district court properly exercised subject matter jurisdiction over this case for two independent reasons. The most straightforward of these, as you've locked on to, is that Fidelity asserted a counterclaim of declaratory judgment of patent invalidity, which triggered the removal of authority under 28 U.S.C. 1454. Under the Holmes Group fix, 1454 was amended to allow removal to federal court whenever any party asserts a claim for relief arising under an act of Congress relating to patents, and that includes counterclaims. Fidelity's counterclaim clearly arose under the Patent Act because the Patent Act is the sole source that establishes the requirement for patent eligibility. And in fact, Fidelity's counterclaim specifically cited the 35 U.S.C., sections 101, 102, 103, 112, and 135 as the basis for the claim. And then you relied, I take it, on Borowski for the essential next step that asserting an invalidity, making an invalidity assertion, even though there's no cause of action for that in Title 35, nevertheless arises under Title 35. Absolutely, Your Honor. And it arises under Title 35 for the reason that you just mentioned, that the Patent Act is the sole source for determining whether a patent is or is not valid. Now, putting the best sort of face or characterization on what Alex Sam is arguing, if you look at their gray brief, I think they probably state it as clearly as anywhere else, they're arguing that the counterclaim did not arise under patent law, but instead arose under the license agreement. But there doesn't seem to be any legal support for that theory. A cause of action doesn't arise under a private agreement between two parties. It arises under a statute or under the common law. In other words, private parties cannot get together and create their own cause of action that doesn't already exist somewhere in the law. And here, the only source of a law that supports a counterclaim for patent invalidity is the Patent Act and Act of Congress. Now, Alex Sam also argues that our invalidity counterclaim couldn't invoke federal jurisdiction because it wouldn't have defeated all claims for damages. It would only defeat claims for damages going forward. But again, 1454 does not require that a counterclaim be capable of defeating all claims, all of the claims for damages. If the other side had filed, had said in the complaint, we file, I forget what year, let's pick September 1st, some year, they file a complaint, and they say, our complaint is purely backward-looking. In this action, we will not seek any relief as to what happens September 2nd and forward. You have a contract that terminates only prospectively. Why, in that situation, would this be a compulsory counterclaim? Your Honor, under that factual scenario, which of course is not this factual scenario. Well, their complaint really doesn't speak to this. So when I was spinning out a theory of we're going to seek damages past September 1st in my hypothetical, and then you can respond to that by saying we're gonna cut that off by getting a November 1st ruling of invalidity. Their complaint, as far as I can tell, is the bare bones of it. It's generic on that, so it presumably seeks all damages. To respond to your hypothetical, which, to be honest with you, Your Honor, I did not consider before standing up here today, but under that hypothetical, I think it might be possible that there wouldn't be a case or controversy for an invalidity counterclaim because they've disclaimed any damages going forward. And under this Studio Genschel case, that might give grounds for a court to say there's not a case or controversy for an invalidity counterclaim. But those aren't the facts of this case. This case, they claim generic damages, which includes damages going forward through trial and pre-judgment interest and everything else. And as Your Honor has noted, under that scenario, especially where the license agreement itself includes a validity clause that would terminate the agreement if the claims are rendered invalid, that does create a case or controversy for a declaratory judgment of patent invalidity. Now, Alex Ammons also argued that our claim for patent invalidity should have been precluded by res judicata, but as we explained in our briefing, res judicata is an affirmative defense to a cause of action. It is not jurisdictional. It does not affect the jurisdiction over that cause of action. Now, if I can just turn for a moment to this court's jurisdiction. This court has jurisdiction because Fidelity's Invalidity Counterclaim was compulsory. And this court has jurisdiction under the Holmes Group fixed to 28 U.S.C. 1295. This court uses the logical relationship test to determine if a counterclaim is compulsory. And I think the most clear explanation I can provide is that the license agreement included a validity provision that would result in termination if the patents were held invalid. And so clearly, there was a logical relationship between the two claims because a successful counterclaim of patent invalidity would terminate the agreement and reduce the amount of damages recoverable under Alex Sam's contract claim. And so I think that's the clearest explanation. But in addition to that, both claims, both the contract claim and the Invalidity Counterclaim required an assessment of patent claim scope. And so it was logical to perform that analysis in the same case rather than. Why don't you argue that we should defer the 11th Circuit? On the compulsory counterclaim, Your Honor? I'm concerned because this court had a footnote in the Vermont v. MPHJ case that seemed to imply that going forward after the Holmes Group fix that this court would apply its own test for compulsoriness. I agree with you that, but for that footnote, that you should defer to the 11th Circuit's ruling on whether an 11th Circuit counterclaim was compulsory. But I was, but the footnote gave me pause as to whether this court was now gonna impose its own independent compulsory test. So that's the answer, Your Honor. With respect to the other ground, I would say that both claims also involved an assessment of patent claim scope. So it was logical to perform that analysis within the same case to avoid inconsistent results and to preserve judicial economy. Can I just ask, I guess I was not at all sure about the proposition, which I don't think is necessary to your argument, that just taking the affirmative contract claims and ignoring everything else, that those would be claims that in order to adjudicate, it would require a patent determination because the agreement is written to define the subject matter of what you can and cannot do in terms that do not incorporate the patent definitions and claims. Yes, Your Honor, you're correct. That particular point does not apply, or it's not necessary for the finding on the compulsory counterclaim issue. It is necessary under an alternative argument that there was a rising under jurisdiction under the Gunn test. But to answer your question directly, the license agreement was a settlement of a patent infringement lawsuit. And the license agreement does state that this is a license of patents. And even the grant clause, Article III, says that there's a grant of a license under the patents for the following activities. The activities are described in terms that use claim terms. They use claim terms such as transaction and prepaid phone card and other terms that come from the claims. And it's our position that in order to construe that, to determine whether a product was in or out of that grant clause, you would actually have to construe those claim terms as a matter of law. And I understand there might be a difference of opinion about that. That's our position on that. But you're absolutely right, it has nothing to do, it's not required to make a finding that the counterclaim is compulsory given this court jurisdiction under 1295. Excuse me, a question about the merits. Yes, Your Honor. Your Honor, we, why is it that there was, that the district court was right in your view that there was actually a termination in this case given that the language of the termination clause requires not only an announcement of a termination by one of the parties, but also another condition in this case, a breach, an actual breach, not simply a claim of breach. So why is there a termination as opposed to, for example, an anticipatory repudiation? There's two reasons. First of all. One of the reasons I bet you're gonna tell me is because the Seventh Circuit says it's true. And let's take. I'll do that one second, but I have another reason. Good. The other reason, putting aside what Florida law says, and I think it's very clear for a lot of, it wasn't the Seventh Circuit interpreting. You keep coming back to the Lugas case, which by the way was a unilateral right of termination. So that seems to be not to help you much with respect to the question of troubling me. So I didn't see anything else in Florida law except the Indian River case, which you didn't cite, but was cited in Aronson that gives any support to this proposition. Your Honor, the first thing I would mention is if you look at the, if you look at paragraph 11, the termination clause of the agreement, it actually talks about, it uses the phrase alleged, I'm just trying to get the, alleged, alleged breaching party. Okay, so. But before it says that, it says, if either party breaches. Correct. Any provision of the SLA. That would seem to me the really operative language. So don't you need to show, in order to have a termination, that there was an actual breach, adjudicated either by a court, or perhaps in some kind of agreed upon resolution scheme that the parties had decided. But just as a matter of contract interpretation, I'm not seeing why there's a termination when one of the conditions of the termination, i.e. breach, has not actually been shown to exist. Well, again, I would point to the word alleged, so I understand your point that that doesn't necessarily, that doesn't refer back to the previous clause, but it does use the word alleged, which I think suggests that the parties understood that this would be an allegation of breach. I'm now forced to go back to Florida law, Your Honor, even though you didn't want to hear about it. No, I'm happy to hear about Florida law, but Florida law, as filtered by the Seventh Circuit, is not, to me, as satisfactory as giving me something that's actually coming, that's Florida law, coming from my side. Well, I can talk to the Lugas case. The Lugas case, the question here, the Lugas case involved a similar situation. Yeah, but that was an agreement in which the termination could be unilaterally invoked, right? But it required a condition precedent. It required that there was a sale of property, and the dispute was whether that condition precedent had occurred, and the court said, essentially, it doesn't matter whether it occurred or not because you terminated the license. Now the only question is whether that termination was wrongful. The same thing here. There's a condition precedent required. That's a breach. We say we didn't breach. They say we did breach, and so there's a dispute just like there was in Lugas, and Florida law says there is a termination because they sent us a notice of termination, and the only question now is whether that condition precedent actually occurred, which would make the termination either wrongful or not wrongful, and so I disagree a little bit that Florida law's not on point here. I think the Lugas case is on point. It seems curious. Florida's a pretty big state, and contracts, there are a lot of contracts out there. It seems odd to me that all we have on this fairly basic question of what happens to end a contract that invokes this notion of termination when one of the conditions has not been satisfied is this one intermediate appellate court decision, plus the Seventh Circuit case. You didn't find anything else out there, I take it? Your Honor, I think the Seventh Circuit case applying Florida law is directly on point. It's a very strongly analogous case involving a patent issue with similar facts, and I would submit the facts were even stronger there because in that case, the licensee actually tendered a royalty payment after termination, which was accepted in cash by the licensor, whereas here we tendered payments that were essentially not cashed until the last minute just before filing suit, but even then they found it was terminated. But this Florida law here, in this respect, is consistent with general law, isn't it, with a general approach to termination? Your Honor, I believe it is. This is the general course of how contracts normally go. There's an allegation of breach, and the parties usually don't agree that there's been a breach. That's not something parties usually agree to. But doesn't that usually fall under the rubric of anticipatory repudiation? It could if the licensee agreed that there was going to be a breach and was willing to essentially repudiate the contract, but I don't think it's, I think it's a garden variety of cases. Repudiation if they weren't relying on the termination clause, but if they rely on the termination clause, then it's treated as a wrongful termination, but still effective. Still effective, absolutely, Your Honor. Unless Your Honors have any additional questions. Thank you, Mr. Morney. Mr. Gresham? Just a couple of quick points. On page 45 of the record, the district court said, defendants have filed their invalidity declaratory action as a counterclaim to an action for breach of contract of an underlying settlement agreement. Circumstances distinguishable  that other courts have determined sufficient to prevent breach of contract. At least satisfy the case or controversy requirement. Mr. Barney was correct. There's no legal precedent for that, and yet that's what the district court ruled was that the termination, the language in the termination provision relative to the license agreement terminating if the patents are found to be invalid was the basis for the, allowing the compulsory counterclaim to fall under federal subject matter jurisdiction. I see that I'm. Okay, thank you, Mr. Gresham. Thank you. Thank you, Mr. Barney and cases. That concludes our session for this morning. All rise.